## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JEAN JOCELYN MERILIEN,** | : | **PRISONER HABEAS CORPUS** |
| **GDC ID # 1048466,** | : | **28 U.S.C. § 2254** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SHAWN EMMONS,** | : | **CIVIL ACTION NO.** |
| **Respondent.** | : | **1:10-CV-3232-WSD-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Petitioner, Jean Jocelyn Merilien, confined in Johnson State Prison in Wrightsville, Georgia, submitted an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in order to challenge his May 19, 2006, Rockdale County convictions. [Doc. 96 at 1.] The matter is before the Court on the amended petition, [*id.*]; Respondent's amended answer-response, [Doc. 98], brief in support thereof, [Doc. 98-1], and supplemental brief, [Doc. 101]; Petitioner's additional filings in support of the amended petition, [Docs. 104, 105, 108, 113]; and exhibits consisting of the record of the state court proceedings, [Docs. 14, 99, 102]. For the reasons discussed below, the undersigned **RECOMMENDS** that the amended petition be **DENIED** and this action be **DISMISSED**.

AO 72A
(Rev.8/8
2)

I.   **Background**

The facts of Petitioner's criminal case are taken largely from the Final Order filed by the Lowndes County Superior Court, [Doc. 14-2], which denied Petitioner's state habeas corpus petition.  Petitioner, a Haitian national, confessed to police that he "shot and killed his wife, with an automatic rifle, in the house with his children present and then gunned down and killed his mother-in-law in the same house" on October 30, 2004.  [*Id.* at 6; Doc. 14-3 at 21, 24-34.]

> Petitioner was indicted by the Rockdale County grand jury on March 6, 2006, for two counts of malice murder, two counts of felony murder, two counts of aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. . . .  The state sought the death penalty against Petitioner . . . .
>
> On May 19, 2006, Petitioner entered a negotiated guilty plea to two counts of malice murder, and received consecutive life sentences; and possession of a firearm during the commission of a crime, for which he received a consecutive five year sentence.

[Doc. 14-2 at 1-2.]  Petitioner did not appeal.  [Doc. 96 at 2.]  However, "[o]n December 6, 2006, Petitioner filed a motion to withdraw his guilty plea, which the court dismissed for lack of jurisdiction on December 12, 2007."  [Doc. 14-2 at 2.]

In his state habeas petition, filed on August 24, 2007, Petitioner raised the following grounds for relief:

2

1. The trial court improperly failed to
    (a) "inform Petitioner of his rights prior to the guilty plea," causing him to "rel[y] solely on the pre-printed guilty plea form," and
    (b) "advise Petitioner of his rights under the Geneva Convention."

2. Trial counsel provided ineffective assistance by failing to
    (a) "meet and discuss the case with Petitioner,"
    (b) "present the 'mitigating Geneva Convention,' " and
    (c) "advise Petitioner of his rights."

3. (a) Petitioner "did not knowingly, intelligently, or voluntarily enter his guilty plea because he never waived his rights [(1)] to not incriminate himself, [(2)] to a trial by jury, [(3)] to confront his accusers, and [(4) under] the Geneva Convention."
    (b) The trial court improperly denied Petitioner "an interpreter at the guilty plea hearing," causing him not to "understand what he was doing."

4. Trial counsel provided ineffective assistance by failing to
    (a) "present mitigating evidence of Petitioner's social background, drug abuse, family abuse, [and] mental health impairment," and
    (b) "investigate and engage in sufficient preparation to be able to present and explain [the] significance of all available mitigating evidence."

5. (a) The trial court improperly "suppressed the evidence that another man allegedly committed the crime and that Petitioner was actually innocent."
    (b) "[T]he prosecutors failed to investigate the man who allegedly committed the crime and . . . failed to disclose before Petitioner's guilty plea evidence that was favorable to

3

AO 72A
(Rev.8/8
2)

him to prove his innocence."

6.      "[T]he trial court violated [Petitioner's] due process rights to counsel under the [F]ifth, [S]ixth, and [F]ourteenth [A]mendments when the state used police and other law [enforcement] statements and perjured testimony to indict [him]."

7.      Trial counsel provided ineffective assistance by failing to
        (a)     "investigate the state's evidence," and
        (b)     "cross-examine [the] state's witnesses."

8.      Trial counsel provided ineffective assistance by
        (a)     conspiring to have Petitioner "plead guilty to a crime of which [he] is innocent, in order to [(1)] 'save' counsel's 'best friend golf player' — i.e., the district attorney, [from] spend[ing] $450,000 for a jury trial, and [(2)] keep up [counsel's] friendship with the district attorney so they both could have time to play golf together," and
        (b)     being disloyal and "racist and prejudiced against Petitioner."

9.      Trial counsel provided ineffective assistance by
        (a)     failing "to withdraw Petitioner's guilty plea and to perfect an appeal when Petitioner specifically instructed counsel to withdraw his plea because he was not satisfied with the sentence and the state used perjured testimony," and
        (b)     "inform[ing] Petitioner that the law did not allow for an appeal of a guilty plea, as Petitioner had waived his rights to one."

[*Id.* at 2-3, 12-13, 15-16; *see also* Doc. 101 at 1-3 (explaining that Petitioner did not raise any other claims in his state habeas petition).]

The state habeas court denied relief in its Final Order, which was filed on

December 11, 2009. [Doc. 14-2 at 1.] The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on September 7, 2010. [Doc. 14-4 at 1.] Petitioner executed his original § 2254 petition on that same date. [Doc. 1 at 32.] This Court ultimately determined that the original petition was timely submitted pursuant to 28 U.S.C. § 2244(d).  [Doc. 85 at 3-9; Doc. 88 at 1.]

Pursuant to the undersigned's Order, [Doc. 94 at 1-2], Petitioner submitted his amended § 2254 petition, which he executed on May 10, 2014, [Doc. 96-5 at 45].  The undersigned interprets the amended petition as raising the same grounds adjudicated by the state habeas court, as well as many additional unexhausted grounds, which are procedurally defaulted.

## II.    <u>Grounds Adjudicated on the Merits</u>

A federal court may not grant habeas relief with respect to a claim previously adjudicated on the merits in state court proceedings unless the adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas

court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The "clearly established Federal law" identified in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412. As to § 2254(d)(2), "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision" for federal habeas review. *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). The Georgia Supreme Court's summary denial

of a certificate of probable cause to appeal constitutes an adjudication on the merits. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1231-32 & n.25 (11th Cir. 2014). Therefore, the federal court's task is "to review the record before the Georgia Supreme Court to determine what arguments or theories supported or . . . could have supported the state court's decision." *Id.* at 1232-33 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)) (internal quotation marks omitted). A federal habeas petitioner must show that "there was no reasonable basis for the [Georgia Supreme Court] to deny relief." *Id.* at 1233 (quoting *Harrington*, 562 U.S. at 98).

Having reviewed the parties' filings and the record of the state court proceedings, the undersigned determines that an evidentiary hearing is not required for disposition of this case. *See* 28 U.S.C. § 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts.

## A.   **Ineffective Assistance of Trial Counsel**

The clearly established federal law that applies to Petitioner's grounds of ineffective assistance of trial counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985). In order to demonstrate ineffective assistance of counsel, a convicted defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the

7

AO 72A
(Rev.8/8
2)

defense." *Strickland*, 466 U.S. at 687.  As to the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.  As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court may consider either prong first and need not address the other "if the defendant makes an insufficient showing on one." *Id.* at 697.  A defendant who has pleaded guilty must satisfy the second prong of *Strickland* by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

> The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . .  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations and internal quotation marks omitted).

8

Petitioner claims that trial counsel provided ineffective assistance by failing to (1) advise him properly, (2) present mitigating evidence, (3) investigate the state's evidence and cross-examine the state's witnesses, (4) remain loyal to him, and (5) withdraw his guilty plea and file an appeal when instructed to do so.  [Doc. 96 at 6, 8, 10, 14-18.]  The state habeas court set forth the following facts regarding counsel's assistance:

> Attorney Dwight Thomas was appointed to represent Petitioner . . . because [he] was qualified to handle death penalty work. . . .  Thomas has been a practicing attorney in the State of Georgia since 1976 and, at the time he represented Petitioner, approximately 95 percent of his practice was devoted to criminal law. . . .

> [Thomas] reviewed the indictment and had . . . the assistance of both a mitigation specialist and a private investigator. . . .

> [Thomas] interviewed Petitioner on multiple occasions and also had numerous conversations with both [prosecutors]. . . .

> In addition, Terry Thompson served as co-counsel. . . .  Thompson . . . was qualified to sit "second chair" in death penalty cases. . . . [Thomas] also traveled to New York to interview potential witnesses who would serve as mitigating and fact witnesses. . . .

> The guilty plea negotiations began once [Thomas] really began to look at the evidence the state had against Petitioner and after [the] evidentiary hearing. . . .  [T]he state established that Petitioner confessed to the murders to the police officers and the state had videotapes of these confessions. . . .  After [Thomas] discovered, through his investigation, that some of Petitioner's children were going to testify for the state about

9

their firsthand observations and that other family members, who Petitioner initially believed would be defense witnesses, were going to testify contrary to what Petitioner was expecting, . . . [Thomas] began to discuss Petitioner's options with him. . . .

[Thomas] was confident that the plea negotiations and the sharing of information would be done in good faith because [he] had a good relationship with the [prosecutors,] as they used to work together in the DeKalb County District Attorney's Office. . . .

[Thomas] believed that, with all of the overwhelming evidence, there was a very likely result of a guilty verdict of malice murder or felony murder, both of which carried the death penalty. . . . [Thomas] explained to Petitioner that, if he were convicted, he had three sentencing options: life without parole, life with parole, or death. . . . [Thomas] convinced the [prosecutor] that the most appropriate resolution in the case would be life with the possibility of parole, which [Thomas] believed was a victory. . . . [Thomas] also explained to Petitioner that an offer extended that day could be taken off the table the next day. . . . Petitioner told [Thomas] that he did not want to go to trial. . . .

[Before Petitioner entered] his guilty plea, [Thomas] discussed Petitioner's constitutional rights with [him], which included the right to a trial by jury, the right to confront witnesses, and the privilege against self-incrimination. . . . [Thomas] did this in English and in French Creole, through an interpreter, although Petitioner was familiar with the English language. . . . Evidence came out at the evidentiary hearing which proved that Petitioner could speak and understand English. . . . [Thomas] also advised Petitioner of the maximum and minimum penalties for each charge in the indictment. . . .

[Thomas] did not advise Petitioner about the Geneva Convention because it was not applicable to a capital case; [it] applied to soldiers in war. . . . If Petitioner intended to invoke the Vienna Convention, [which applies to the detainment of a foreign national, Thomas] did not bring [it]

10

up as an issue because the United States Supreme Court had recently ruled that the Vienna Convention did not [require] the suppression of statements. . . .

[A]t the guilty plea hearing, [Thomas] stated under oath that he went over the plea forms with Petitioner, a couple [of] days prior to [his] plea, in both English and French Creole. . . .   Petitioner stated under oath at the plea hearing that he had an adequate opportunity to go over the plea sheet before he completed it and that he understood that, by filling out the plea form and handing it [to] the court, he was waiving all of [the] rights that were enumerated on the plea sheet.

[Doc. 14-2 at 4-7.]  The state habeas court applied *Strickland* and *Hill* to Petitioner's case and reached the following conclusion:

[Thomas] zealously represented Petitioner throughout his case and his guilty plea.  [Thomas] met with Petitioner several times and employed both a licensed private investigator and a mitigation expert investigator. [Thomas] reviewed all of the evidence in the case and fully investigated every avenue possible, including mitigating evidence, in order for Petitioner to avoid the death penalty. . . .

[Thomas] fully informed Petitioner of the constitutional rights [he] would be waiving by pleading guilty.  [Thomas] went over the waiver of rights form with Petitioner, as reflected by the guilty plea transcript.  In addition, during plea negotiations, [Thomas] explained and informed Petitioner of the constitutional rights he would be waiving by entering the plea, and [Thomas] thought that Petitioner understood these rights.

Petitioner has not shown that counsel acted unreasonably in not relying on either the Geneva Convention, which applies to soldiers in war, or the Vienna Convention, [which applies to the detainment of a foreign national].  The United States Supreme Court has not squarely answered the question of whether the Vienna Convention created an enforceable

11

individual right, but has held that assuming it did, a claim under the Vienna Convention was subject to state procedural rules. [*Sanchez-Llamas v. Oregon*], 548 U.S. 331, 336 (2006). The Georgia Supreme Court has held: "[I]t is clear that nothing in the text [of the Vienna Convention] requires suppression of evidence or dismissal of the indictment for violations. . . ." *Ramirez v. State*, 279 Ga. 569, 575, 619 S.E.2d 668, [673] (2005).

Petitioner cannot show prejudice, as none of his statements would have been suppressed based on the alleged violation.

Contrary to Petitioner's assertions, [Thomas] did not conspire to have Petitioner plead guilty, despite [his] purported innocence, in order to avoid spending money for a trial and to maintain [Thomas's] friendship with the prosecutor. [Thomas] investigated the case, determined that the evidence against Petitioner was overwhelming, and, in order to avoid a death sentence, obtained a favorable plea bargain that allowed Petitioner to [plead] guilty to both murders and receive life sentences. Petitioner has not shown that [Thomas] was not acting in Petitioner's best interests when [Thomas] . . . negotiated a plea agreement which allowed Petitioner to avoid a death sentence or a sentence of life without parole.

In light of the plea agreement which called for life sentences for malice murder, there was no need for [Thomas] to present additional evidence in mitigation. Life was the only remaining sentence available after the state elected not to pursue the death penalty. *See* [Ga. Code Ann.] § 16-5-1(d).

Petitioner has presented no evidence that he informed [Thomas] that he wanted to withdraw his plea. . . . [W]ithdrawal of a guilty plea is only permitted where a defendant "proves that withdrawal is necessary to correct a manifest injustice." [Ga. Unif. Super. Ct. R.] 33.12(A). . . . Petitioner offers only speculation that, had he timely filed a motion to withdraw, the motion would have been granted. Speculation does not establish prejudice under *Strickland*. . . .

12

> Based on the foregoing, Petitioner has not shown a deficient performance [by Thomas].  Petitioner also has not shown prejudice, because he has not shown that, but for [Thomas's] alleged errors or omissions, he would not have pleaded guilty and would have insisted on going to trial.

[*Id.* at 9-12 (footnote omitted).]

As the state habeas court determined, Thomas investigated the case and properly advised Petitioner regarding the waiver of his rights and the immateriality of the Geneva and Vienna Conventions.  After Thomas negotiated a favorable outcome for Petitioner, namely, a sentence of life with the possibility of parole, mitigating evidence was no longer relevant.  Petitioner failed to show that Thomas conspired against him, acted disloyally, or was "racist and prejudiced."  [*Id.* at 3.]  Petitioner also failed to show that he had informed Thomas that he wanted to withdraw his guilty plea.

The state habeas court reasonably concluded that (1) Thomas's performance was not deficient, and (2) Petitioner had failed to show a reasonable probability that, but for Thomas's alleged errors, Petitioner would not have pleaded guilty and would have insisted on going to trial.  It follows that the Georgia Supreme Court's summary denial of Petitioner's application for a certificate of probable cause to appeal was (1) neither contrary to, nor an unreasonable application of, federal law, and (2) not based on an unreasonable determination of the facts.

Accordingly, as to Petitioner's claims of ineffective assistance of trial counsel, the undersigned **RECOMMENDS** that the Georgia Supreme Court's adjudication warrants deference pursuant to 28 U.S.C. § 2254(d).

### B.    Alleged Errors Preceding Petitioner's Guilty Plea

Petitioner claims that before he pleaded guilty (1) the trial court improperly suppressed evidence of his actual innocence, (2) the prosecutors failed to investigate the evidence and disclose it to him, and (3) his indictment was improper, but the trial court allowed it to stand.  [Doc. 96 at 10-14.]  The state habeas court explained that Petitioner had waived those claims by pleading guilty.  [Doc. 14-2 at 15-16.]

A criminal defendant who has pleaded guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The entry of a guilty plea "waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (quoting *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992)).  Furthermore,

> when the judgment of conviction upon a guilty plea has become final and

14

the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).

The state habeas court correctly determined that Petitioner's guilty plea waived his claims of errors preceding that plea.  Therefore, the Georgia Supreme Court's summary denial of Petitioner's application for a certificate of probable cause to appeal was (1) neither contrary to, nor an unreasonable application of, federal law, and (2) not based on an unreasonable determination of the facts.

Accordingly, as to Petitioner's claims of errors preceding his guilty plea, the undersigned **RECOMMENDS** that the Georgia Supreme Court's adjudication warrants deference pursuant to 28 U.S.C. § 2254(d).

C.    **Voluntariness of Guilty Plea**

Petitioner claims that (1) before he pleaded guilty, the trial court improperly failed to inform him of his rights, including those under the Geneva and Vienna Conventions, (2) the court improperly denied him an interpreter, and (3) he did not plead guilty knowingly, intelligently, or voluntarily.  [Doc. 96 at 6, 8, 9, 19-20.]  As the state habeas court explained,

15

[t]he guilty plea transcript reveals that the trial court went over and made certain that counsel had gone over the plea form with Petitioner, which included his right to a jury trial, his right against self-incrimination, and the right to confront his accusers, [as required by *Boykin v. Alabama*, 395 U.S. 238 (1969)]. . . .  Counsel confirmed that he had and did so in both English and French Creole, with help from an interpreter. . . .  Also, counsel explained all of the *Boykin* rights to Petitioner prior to Petitioner entering his plea. . . .

The record is clear that Petitioner understood he was waiving the rights listed on the plea form. . . .  [T]he court asked, "[Petitioner], do you understand that by filling out this plea sheet and handing it to the court, that you are waiving all the rights that you have enumerated on this plea sheet ([question] interpreted by an interpreter)?" . . .  Petitioner answered, "Yes."  Then, the court asked Petitioner, "Is it your intention to do that ([question] interpreted by an interpreter)?"  Again, Petitioner answered, "Yes." . . .

Here, the record as a whole, which includes counsel's testimony at the habeas hearing, as well as his declarations made in open court at the guilty plea hearing, and Petitioner's statements at the guilty plea hearing, together with the waiver of rights form which was filled out and signed by Petitioner, shows that Petitioner knowingly and intelligently waived his *Boykin* rights. . . .

Petitioner's allegation that the court denied him an interpreter is belied by the record.  References to an interpreter being present and interpreting questions for Petitioner are found throughout the guilty plea transcript. . . .

*Boykin* does not establish a constitutional procedural rule or require state trial judges to address defendants personally.  *Boykin* only requires that the court accepting a guilty plea ensure that the record is accurate for subsequent review, and "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the

16

charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  There is no constitutional requirement that a state trial judge explain a defendant's purported "rights" under the Geneva or Vienna Conventions to a defendant as a prerequisite for accepting a guilty plea.

Therefore, Petitioner's guilty plea was not void or invalid for any reason.

[Doc. 14-2 at 13-15.]

The state habeas court correctly determined that the trial court (1) properly informed Petitioner of his *Boykin* rights before he pleaded guilty, and (2) was not required to provide information regarding the Geneva or Vienna Conventions.  The state habeas court also correctly explained that an interpreter assisted Petitioner when he pleaded guilty.  Finally, the court correctly concluded that Petitioner had affirmatively indicated his understanding that he waived his *Boykin* rights.  Therefore, the Georgia Supreme Court's summary denial of Petitioner's application for a certificate of probable cause to appeal was (1) neither contrary to, nor an unreasonable application of, federal law, and (2) not based on an unreasonable determination of the facts.

Accordingly, as to Petitioner's claims of errors regarding the voluntariness of his guilty plea, the undersigned **RECOMMENDS** that the Georgia Supreme Court's

AO 72A (Rev.8/8 2)

adjudication warrants deference pursuant to 28 U.S.C. § 2254(d).

## III.    Procedurally Defaulted Grounds

A federal habeas petitioner must first exhaust his state court remedies or show that a state corrective process is unavailable or ineffective to protect his rights. 28 U.S.C. § 2254(b)(1). Exhaustion requires that a state prisoner present his claims, on direct appeal or collateral review, to the highest state court according to that state's appellate procedure. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (per curiam). When a federal habeas petitioner raises unexhausted claims that would be procedurally barred in state court pursuant to state law, the federal court may "treat those claims now barred by state law as no basis for federal habeas relief. . . . The unexhausted claims should be treated as if procedurally defaulted." *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (citations and internal quotation marks omitted).

Under Georgia law, "[a]ll grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition," and subsequent petitions may assert only grounds that "could not reasonably have been raised in the original or amended petition." Ga. Code Ann. § 9-14-51. That statute "can and should be enforced in federal habeas proceedings against claims never presented in state court . . . ." *Chambers v. Thompson*, 150 F.3d 1324, 1327

18

(11th Cir. 1998).

A petitioner may obtain federal habeas review of procedurally defaulted claims by (1) showing cause and actual prejudice, or (2) presenting "proof of actual innocence, not just legal innocence." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

In the present case, Petitioner failed to comply with Georgia law because he did not present his remaining claims on direct appeal or collateral review. [Doc. 96 at 10-17, 19-40; Docs. 96-1, 96-2, 96-3, 96-4, 96-5; *see also* Doc. 98 at 4-38 (summarizing Petitioner's unexhausted grounds).] Petitioner has not overcome his default by showing cause and actual prejudice.

In attempting to demonstrate actual innocence, Petitioner presents the November 30, 2011, affidavits of his mother, Leonie Cadet Merilien, and his sister, Marie Veronique Merilien. [Doc. 96-6 at 13-16, 23-24.] Petitioner's mother avers that his "crazy," "evil," and "wicked" teenage children by a previous marriage, Raphael and

Stacha, called her on October 30, 2004, and confessed that they had just murdered Petitioner's wife and mother-in-law, but Petitioner decided to take responsibility in order to spare them from having to go to prison.  [*Id.* at 13-16.] Petitioner's sister avers that Raphael and Stacha also admitted to her "on multiple occasions" that they had committed the murders.  [*Id.* at 23-24.]

Neither Petitioner's mother nor sister explains the approximately seven-year delay in submitting those affidavits.  *See McQuiggin v. Perkins*, --- U.S. ----, ----, 133 S. Ct. 1924, 1935-36 (2013) (when evaluating the credibility of an actual innocence claim, a court should consider the amount of delay in presenting new evidence). Petitioner has not presented any other new evidence supporting the claim made in the affidavits.  The undersigned concludes that Petitioner has shown neither (1) that the affidavits constitute "reliable evidence," nor (2) that it is "more likely than not that no reasonable juror would have convicted him in the light of the [affidavits]."  *Schlup*, 513 U.S. at 324, 327.

Accordingly, the undersigned **RECOMMENDS** that Petitioner be **DENIED** habeas corpus relief as to his procedurally defaulted claims.

20

## IV.   <u>Certificate of Appealability (COA)</u>

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

21

A COA should be denied because the resolution of the issues presented is not debatable.  If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts.

**V.**     **Conclusion**

For the reasons stated above,

**IT IS RECOMMENDED** that the amended petition, [Doc. 96], be **DENIED**, a COA be **DENIED**, and this action be **DISMISSED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this __10th__ day of April, 2017.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

22