# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JEAN JOCELYN MERILIEN,

**Plaintiff,**

v.

SHAWN EMMONS,

**Defendant.**

1:10-cv-3232-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's Final Report & Recommendation [130]. The R&R recommends the Court deny Petitioner Jean Jocelyn Merilien's ("Petitioner") Amended 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus [96] ("Section 2254 Petition"). Also before the Court are Petitioner's Objections to the R&R [134], Motion for Leave to File Amended or Additional Objections [135], Motion to Change Respondent Name [136], Motion to Review Documents and Request for the Court to Review Documents to Support Objections and Amended Petition [138] ("Motion to Review Documents"), and Motion for Evidentiary Hearing to Allow Key Witness to Testify without fear of Deportation to El Salvador [139] ("Motion for Evidentiary Hearing").

# I.    BACKGROUND

### A.    <u>Facts</u>[1]

Petitioner, confined in Wilcox State Prison in Abbeville, Georgia, challenges

his May 19, 2006, Rockdale County, Georgia convictions.  Petitioner, who is a

Haitian national, confessed to police that, on October 30, 2004, he "shot and killed

his wife, with an automatic rifle, in the house with his children present and then

gunned down and killed his mother-in-law in the same house."  ([14.2] at 6;

[14.3] at 21, 24-34).  Petitioner's state habeas court described Petitioner's

indictment and conviction as follows:

> Petitioner was indicted by the Rockdale County grand jury on
> March 6, 2006, for two counts of malice murder, two counts of felony
> murder, two counts of aggravated assault, possession of a firearm
> during the commission of a crime, and possession of a firearm by a
> convicted felon. . . .  The state sought the death penalty against
> Petitioner. . . .
>
> On May 19, 2006, Petitioner entered a negotiated guilty plea to
> two counts of malice murder, and received consecutive life sentences;
> and possession of a firearm during the commission of a crime, for
> which he received a consecutive five year sentence.

---

[1]    The facts are taken from the R&R and the record.  The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir.  1993).

([14.2] at 1-2).  Petitioner did not appeal.  ([96] at 2).  "On December 6, 2006,

Petitioner filed a motion to withdraw his guilty plea, which the court dismissed for

lack of jurisdiction on December 12, 2007."  ([14.2] at 2).  In his state habeas

petition, filed on August 24, 2007, Petitioner raised the following grounds for

relief:

1.      The trial court improperly failed to

    (a)      "inform Petitioner of his rights prior to the guilty plea," causing him
             to "rel[y] solely on the pre-printed guilty plea form," and

    (b)      "advise Petitioner of his rights under the Geneva Convention."

2.      Trial counsel provided ineffective assistance by failing to

    (a)      "meet and discuss the case with Petitioner,"

    (b)      "present the 'mitigating Geneva Convention,'" and

    (c)       "advise Petitioner of his rights."

3.      (a)      Petitioner "did not knowingly, intelligently, or voluntarily enter his
             guilty plea because he never waived his rights [(1)] to not incriminate
             himself, [(2)] to a trial by jury, [(3)] to confront his accusers, and
             [(4) under] the Geneva Convention."

    (b)      The trial court improperly denied Petitioner "an interpreter at the
             guilty plea hearing," causing him not to "understand what he was
             doing."

4.      Trial counsel provided ineffective assistance by failing to

    (a)      "present mitigating evidence of Petitioner's social background, drug
             abuse, family abuse, [and] mental health impairment," and

(b)     "investigate and engage in sufficient preparation to be able to present and explain [the] significance of all available mitigating evidence."

5.    (a)    The trial court improperly "suppressed the evidence that another man allegedly committed the crime and that Petitioner was actually innocent."

    (b)    "[T]he prosecutors failed to investigate the man who allegedly committed the crime and . . . failed to disclose before Petitioner's guilty plea evidence that was favorable to him to prove his innocence."

6.    "[T]he trial court violated [Petitioner's] due process rights to counsel under the [F]ifth, [S]ixth, and [F]ourteenth [A]mendments when the state used police and other law [enforcement] statements and perjured testimony to indict [him]."

7.    Trial counsel provided ineffective assistance by failing to

(a)    "investigate the state's evidence," and

(b)    "cross-examine [the] state's witnesses."

8.    Trial counsel provided ineffective assistance by

(a)    conspiring to have Petitioner "plead guilty to a crime of which [he] is innocent, in order to [(1)] 'save' counsel's 'best friend golf player' — i.e., the district attorney, [from] spend[ing] $450,000 for a jury trial, and [(2)] keep up [counsel's] friendship with the district attorney so they both could have time to play golf together," and

(b)    being disloyal and "racist and prejudiced against Petitioner."

9.    Trial counsel provided ineffective assistance by

(a)    failing "to withdraw Petitioner's guilty plea and to perfect an appeal when Petitioner specifically instructed counsel to withdraw his plea because he was not satisfied with the sentence and the state used perjured testimony," and

(b) "inform[ing] Petitioner that the law did not allow for an appeal of a guilty plea, as Petitioner had waived his rights to one."

(Id. at 2-3, 12-13, 15-16; see also [101] at 1-3 (explaining Petitioner did not raise any other claims in his state habeas petition)).

On December 11, 2009, the state habeas court issued its Final Order denying relief to Petitioner. ([14.2] at 1). On September 7, 2010, the Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal ([14.4] at 1). The Court sets forth additional facts below.

B.    Procedural History

On October 7, 2010, Petitioner filed his original Section 2254 petition. ([1] at 32). The Court determined that the original petition was timely submitted pursuant to 28 U.S.C. § 2244(d). ([85] at 3-9; [88] at 1).

Pursuant to the Magistrate Judge's order, ([ 94] at 1-2), on May 10, 2014, Petitioner submitted his amended Section 2254 petition. On April 10, 2017, the Magistrate Judge issued his R&R. The Magistrate Judge interpreted the Section 2254 Petition as raising the same grounds adjudicated by the state habeas court, as well as additional unexhausted grounds, which the Magistrate Judge found were procedurally barred. The Magistrate Judge found that, with respect to Petitioner's claim of ineffective assistance of trial counsel, the Georgia Supreme Court's adjudication warrants deference pursuant to 28 U.S.C. §2254(d). He also

found that deference is warranted on Petitioner's claims of errors preceding his guilty plea and regarding the voluntariness of his guilty plea  The Magistrate Judge determined that Petitioner's actual innocence claims are not supported by reliable evidence.  The Magistrate Judge recommends the Court deny Petitioner's Habeas Petition, and deny a certificate of appealability.

On April 24, 2017, Petitioner filed his Objections to the R&R.  The Objections, which consist of forty hand-written pages, largely restate the arguments Petitioner made in support of his Section 2254 Petition.  Petitioner claims the Magistrate Judge failed to "fully or adequately review all [Petitioner's] claims/grounds and evidence enclosed with [his Section 2254 Petition] . . . ." (Obj. at 2).  Petitioner also asserts that his actual innocence claims were fully supported by reliable evidence.

On May 5, 2017, Petitioner filed his Motion for Leave to File Amended or Additional Objections.[2]  In the motion, Petitioner argues, in an apparent attempt to avoid deference to the state habeas court's decision regarding his habeas petition, that his state court habeas petition was untimely, and thus the state habeas court "lack[ed] jurisdiction to enter the judgment.  (See [135] at 1-2).

---

[2]     Petitioner's Motion for Leave to File Amended or Additional Objection is granted, and the Court considers the objections raised in the motion.

On May 15, 2017, Petitioner filed his Motion to Change Respondent Name. He states that he has been transferred to Wilcox State Prison, and he seeks to change Respondent's name to Antoine Caldwell, the warden of the prison. The same day, Petitioner filed his Motion to Review Documents. In it, he asks the Court to "disregard prior requests for 21/30 days extentions [sic] to file objections" and asks the Court to review several documents filed with the Court. ([138] at 1-2).[3] On May 17, 2017, Petitioner filed his Motion for Evidentiary Hearing. Petitioner claims Sarah Rodriguez, the mother of one of his children, is a key alibi witness in this case, but that, because she is not in the country legally, his trial attorneys advised him not to let her testify. He now seeks to have her testify without the threat of deportation.

## II.    DISCUSSION

### A.    Motion to Change Respondent Name

Petitioner states that he has been transferred to Wilcox State Prison, and he seeks to change Respondent's name to Antoine Caldwell, the warden of the prison. "If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." Rule 2(a), Rules

---

[3]    Petitioner's Motion to Review Documents is granted, and the Court reviews the documents Petitioner presents to the extent they are relevant to the Court's adjudication of Petitioner's Section 2254 Petition.

Governing § 2254 Cases in the United States District Courts.  The proper respondent is ordinarily the warden of the petitioner's institution.  Id., Advisory Committee Notes.  Because Petitioner is now in the custody of Warden Caldwell, Petitioner's Motion to Change Respondent Name is granted.

B.    Section 2254 Petition

1.    Standard of Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  Where no party has objected to the report and recommendation, the Court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).  Because Petitioner objects to the R&R, the Court conducts its de novo review.

2. <u>Grounds Adjudicated on the Merits</u>

Petitioner raises the following claims that were adjudicated on the merits by the state habeas court:  (1) ineffective assistance of counsel; (2) errors preceding his guilty plea; and (3) involuntary guilty plea.

A federal court may not grant habeas relief for claims previously adjudicated on the merits by a state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Harrington v.  Richter</u>, 562 U.S.  86, 101 (2011) (internal quotation marks omitted) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   <u>Id.</u> at 103.  The state court's determinations of factual issues are presumed correct, absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1).

The Magistrate Judge determined that the Georgia Supreme Court's adjudication of Petitioner's claims warrants deference pursuant to 28 U.S.C. § 2254(d). In his objections, Petitioner now argues that his state court habeas petition was untimely, and thus the state habeas court "lack[ed] jurisdiction to enter the judgment. (See [135] at 1-2). Petitioner's argument is without merit. O.C.G.A. § 9-14-42(c) provides a four-year statute of limitations to file a state habeas petition to challenge a felony conviction. The statute generally runs from "[t]he judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for seeking such review" unless some other triggering event in the statute is applicable. O.C.G.A. § 9-14-42(c)(1). Petitioner pleaded guilty to two counts of malice murder on May 19, 2006. Petitioner's convictions became final on June 19, 2006. ([85] at 4). He had four years from this date to challenge his conviction. His state-court habeas petition, filed on August 24, 2007, was filed well within the statute of limitations, and the Court rejects Petitioner's argument that the state habeas court lacked jurisdiction over his state-court habeas petition. The Court proceeds to analyze each of the claims the Georgia Supreme Court adjudicated on the merits.

i.    Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel provided ineffective assistance.  To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's conduct was "outside the wide range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 690, 694 (1984).  Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  "In the context of guilty pleas, . . . [t]he second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

When this deferential Strickland standard is "combined with the extra layer of deference that § 2254 provides [in federal habeas cases], the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied Strickland's deferential standard.'" Johnson v. Sec'y, DOC, 643

11

F.3d 907, 910-11 (11th Cir. 2011) (quoting Harrington, 562 U.S. at 105).

"Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Id. at 911.

The state habeas court set forth the following facts regarding Petitioner's trial counsel:

> Attorney Dwight Thomas was appointed to represent Petitioner . . . because [he] was qualified to handle death penalty work. . . . Thomas has been a practicing attorney in the State of Georgia since 1976, and, at the time he represented Petitioner, approximately 95 percent of his practice was devoted to criminal law. . . .

> [Thomas] reviewed the indictment and had . . . the assistance of both a mitigation specialist and a private investigator. . . .

> [Thomas] interviewed Petitioner on multiple occasions and also had numerous conversations with both [prosecutors]. . . .

> In addition, Terry Thompson served as co-counsel. . . . Thompson . . . was qualified to sit "second chair" in death penalty cases. . . . [Thomas] also traveled to New York to interview potential witnesses who would serve as mitigating and fact witnesses. . . . The guilty plea negotiations began once [Thomas] really began to look at the evidence the state had against Petitioner and after [the] evidentiary hearing. . . . [T]he state established that Petitioner confessed to the murders to the police officers and the state had videotapes of these confessions. . . . After [Thomas] discovered, through his investigation, that some of Petitioner's children were going to testify for the state about their firsthand observations and that other family

members, who Petitioner initially believed would be defense witnesses, were going to testify contrary to what Petitioner was expecting, . . . [Thomas] began to discuss Petitioner's options with him. . . .

[Thomas] was confident that the plea negotiations and the sharing of information would be done in good faith because [he] had a good relationship with the [prosecutors,] as they used to work together in the DeKalb County District Attorney's Office. . . .

[Thomas] believed that, with all of the overwhelming evidence, there was a very likely result of a guilty verdict of malice murder or felony murder, both of which carried the death penalty. . . . [Thomas] explained to Petitioner that, if he were convicted, he had three sentencing options: life without parole, life with parole, or death. . . . [Thomas] convinced the [prosecutor] that the most appropriate resolution in the case would be life with the possibility of parole, which [Thomas] believed was a victory. . . . [Thomas] also explained to Petitioner that an offer extended that day could be taken off the table the next day. . . . Petitioner told [Thomas] that he did not want to go to trial. . . .

[Before Petitioner entered] his guilty plea, [Thomas] discussed Petitioner's constitutional rights with [him], which included the right to a trial by jury, the right to confront witnesses, and the privilege against self-incrimination. . . . [Thomas] did this in English and in French Creole, through an interpreter, although Petitioner was familiar with the English language. . . . Evidence came out at the evidentiary hearing which proved that Petitioner could speak and understand English. . . . [Thomas] also advised Petitioner of the maximum and minimum penalties for each charge in the indictment. . . .

[Thomas] did not advise Petitioner about the Geneva Convention because it was not applicable to a capital case; [it] applied to soldiers in war. . . . If Petitioner intended to invoke the Vienna Convention, [which applies to the detainment of a foreign national, Thomas] did not bring [it] up as an issue because the United States Supreme Court had recently ruled that the Vienna Convention did not [require] the suppression of statements. . . .

> [A]t the guilty plea hearing, [Thomas] stated under oath that he went over the plea forms with Petitioner, a couple [of] days prior to [his] plea, in both English and French Creole. . . .  Petitioner stated under oath at the plea hearing that he had an adequate opportunity to go over the plea sheet before he completed it and that he understood that, by filling out the plea form and handing it [to] the court, he was waiving all of [the] rights that were enumerated on the plea sheet.

([14.2] at 4-7).

The state habeas court applied <u>Strickland</u> and <u>Hill</u> to Petitioner's case and

reached the following conclusion:

> [Thomas] zealously represented Petitioner throughout his case and his guilty plea.  [Thomas] met with Petitioner several times and employed both a licensed private investigator and a mitigation expert investigator.  [Thomas] reviewed all of the evidence in the case and fully investigated every avenue possible, including mitigating evidence, in order for Petitioner to avoid the death penalty. . . .

> [Thomas] fully informed Petitioner of the constitutional rights [he] would be waiving by pleading guilty.  [Thomas] went over the waiver of rights form with Petitioner, as reflected by the guilty plea transcript.  In addition, during plea negotiations, [Thomas] explained and informed Petitioner of the constitutional rights he would be waiving by entering the plea, and [Thomas] thought that Petitioner understood these rights.

> Petitioner has not shown that counsel acted unreasonably in not relying on either the Geneva Convention, which applies to soldiers in war, or the Vienna Convention, [which applies to the detainment of a foreign national].  The United States Supreme Court has not squarely answered the question of whether the Vienna Convention created an enforceable individual right, but has held that assuming it did, a claim under the Vienna Convention was subject to state procedural rules. [Sanchez-Llamas v. Oregon], 548 U.S. 331, 336 (2006).  The Georgia Supreme Court has held:  "[I]t is clear that nothing in the text [of the Vienna Convention] requires suppression of evidence or dismissal of

the indictment for violations. . . ."  <u>Ramirez v. State</u>, 279 Ga. 569, 575, 619 S.E.2d 668, [673] (2005).

Petitioner cannot show prejudice, as none of his statements would have been suppressed based on the alleged violation.

Contrary to Petitioner's assertions, [Thomas] did not conspire to have Petitioner plead guilty, despite [his] purported innocence, in order to avoid spending money for a trial and to maintain [Thomas's] friendship with the prosecutor.  [Thomas] investigated the case, determined that the evidence against Petitioner was overwhelming, and, in order to avoid a death sentence, obtained a favorable plea bargain that allowed Petitioner to [plead] guilty to both murders and receive life sentences.  Petitioner has not shown that [Thomas] was not acting in Petitioner's best interests when [Thomas] . . . negotiated a plea agreement which allowed Petitioner to avoid a death sentence or a sentence of life without parole.

In light of the plea agreement which called for life sentences for malice murder, there was no need for [Thomas] to present additional evidence in mitigation.  Life was the only remaining sentence available after the state elected not to pursue the death penalty.  <u>See</u> [O.C.G.A.] § 16-5-1(d).

Petitioner has presented no evidence that he informed [Thomas] that he wanted to withdraw his plea. . . .  [W]ithdrawal of a guilty plea is only permitted where a defendant "proves that withdrawal is necessary to correct a manifest injustice." [Ga. Unif. Super. Ct. R). 33.12(A) . . . .  Petitioner offers only speculation that, had he timely filed a motion to withdraw, the motion would have been granted. Speculation does not establish prejudice under <u>Strickland</u>. . . .

Based on the foregoing, Petitioner has not shown a deficient performance [by Thomas].  Petitioner also has not shown prejudice, because he has not shown that, but for [Thomas's] alleged errors or omissions, he would not have pleaded guilty and would have insisted on going to trial.

(<u>Id.</u> at 9-12 (footnote omitted)).

15

Petitioner here renews his claims that trial counsel provided ineffective assistance by failing to (1) advise him properly, (2) present mitigating evidence, (3) investigate the state's evidence and cross-examine the state's witnesses, (4) remain loyal to him, and (5) withdraw his guilty plea and file an appeal when instructed to do so.  ([96] at 6, 8, 10, 14-18).  As the state habeas court found, Thomas investigated the case and properly advised Petitioner regarding the waiver of his rights and the immateriality of the Geneva and Vienna Conventions.  The presentation of mitigating evidence was irrelevant after Thomas negotiated a favorable outcome for Petitioner.  There is no evidence Thomas conspired against Petitioner, acted disloyally, or was "racist and prejudiced."   There is no evidence Petitioner informed Thomas that he wanted to withdraw his guilty plea.  Petitioner claims in his Objections that, on December 6, 2006, Petitioner filed a one-page motion with the trial court withdrawing his guilty plea.  This motion was filed nearly seven months after Petitioner entered his guilty plea.

The Court finds the state habeas court reasonably concluded that (1) Thomas's performance was not deficient, and (2) Petitioner failed to show a reasonable probability that, but for Thomas's alleged errors, Petitioner would not have pleaded guilty and would have insisted on going to trial.  Under these circumstances, the Georgia Supreme Court's denial of Petitioner's application for a

certificate of probable cause to appeal was (1) neither contrary to, nor an unreasonable application of, federal law, and (2) not based on an unreasonable determination of the facts. On *de novo* review, the Court finds the Georgia Supreme Court's adjudication of Petitioner's claim of ineffective assistance of trial counsel warrants deference pursuant to 28 U.S.C. § 2254(d).

ii.    Alleged Errors Preceding Guilty Plea

Petitioner claims that before he pleaded guilty (1) the trial court improperly suppressed evidence of his actual innocence, (2) the prosecutors failed to investigate the evidence and disclose it to him, and (3) his indictment was improper, but the trial court allowed it to stand. ([96] at 10-14). The state habeas court explained that Petitioner had waived those claims by pleading guilty. ([14.2] at 15-16).

A criminal defendant who has pleaded guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). The entry of a guilty plea "waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." United States v. De La Garza,

516 F.3d 1266, 1271 (11th Cir. 2008) (quoting <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992)).

Because Petitioner pleaded guilty, the state habeas court correctly found that Petitioner waived his pre-guilty plea claims of error. The Georgia Supreme Court's denial of Petitioner's application for a certificate of probable cause to appeal was thus (1) neither contrary to, nor an unreasonable application of, federal law, and (2) not based on an unreasonable determination of the facts. On *de novo* review, the Court finds the Georgia Supreme Court's adjudication of Petitioner's claims of pre-guilty plea errors warrants deference pursuant to 28 U.S.C. § 2254(d).

### iii. <u>Voluntariness of Guilty Plea</u>

Petitioner claims that (1) before he pleaded guilty, the trial court improperly failed to inform him of his rights, including those under the Geneva and Vienna Conventions, (2) the court improperly denied him an interpreter, and (3) he did not plead guilty knowingly, intelligently, or voluntarily. ([96] at 6, 8, 9, 19-20). Regarding Petitioner's claims with respect to the voluntariness of his guilty plea, the state habeas court found as follows:

> The guilty plea transcript reveals that the trial court went over and made certain that counsel had gone over the plea form with Petitioner, which included his right to a jury trial, his right against self-incrimination, and the right to confront his accusers, [as required

by <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969)] . . . .  Counsel confirmed that he had and did so in both English and French Creole, with help from an interpreter. . . .  Also, counsel explained all of the <u>Boykin</u> rights to Petitioner prior to Petitioner entering his plea. . . .

The record is clear that Petitioner understood he was waiving the rights listed on the plea form. . . .  [T]he court asked, "[Petitioner], do you understand that by filling out this plea sheet and handing it to the court, that you are waiving all the rights that you have enumerated on this plea sheet ([question] interpreted by an interpreter)?" . . . . Petitioner answered, "Yes."  Then, the court asked Petitioner, "Is it your intention to do that ([question] interpreted by an interpreter)?" Again, Petitioner answered, "Yes.". . .

Here, the record as a whole, which includes counsel's testimony at the habeas hearing, as well as his declarations made in open court at the guilty plea hearing, and Petitioner's statements at the guilty plea hearing, together with the waiver of rights form which was filled out and signed by Petitioner, shows that Petitioner knowingly and intelligently waived his <u>Boykin</u> rights. . . .

Petitioner's allegation that the court denied him an interpreter is belied by the record.  References to an interpreter being present and interpreting questions for Petitioner are found throughout the guilty plea transcript. . . .

<u>Boykin</u> does not establish a constitutional procedural rule or require state trial judges to address defendants personally.  <u>Boykin</u> only requires that the court accepting a guilty plea ensure that the record is accurate for subsequent review, and "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."  <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, 183 (2005).  There is no constitutional requirement that a state trial judge explain a defendant's purported "rights" under the Geneva or Vienna Conventions to a defendant as a prerequisite for accepting a guilty plea.  Therefore, Petitioner's guilty plea was not void or invalid for any reason.

([14.2] at 13-15).

The Magistrate Judge found that the state habeas court correctly determined that the trial court (1) properly informed Petitioner of his <u>Boykin</u> rights before he pleaded guilty, and (2) was not required to provide information regarding the Geneva or Vienna Conventions. The Court agrees. The state habeas court noted that an interpreter assisted Petitioner when he pleaded guilty, and concluded that Petitioner had affirmatively indicated his understanding that he waived his <u>Boykin</u> rights. Accordingly, the Court finds the Georgia Supreme Court's denial of Petitioner's application for a certificate of probable cause to appeal was (1) neither contrary to, nor an unreasonable application of, federal law, and (2) not based on an unreasonable determination of the facts. On *de novo* review, the Court finds the Georgia Supreme Court's adjudication of Petitioner's claims regarding the voluntariness of his guilty plea warrants deference pursuant to 28 U.S.C. § 2254(d).

### 3.   Procedurally Defaulted Claims

Petitioner raises a number of grounds for relief that he did not present on direct appeal or collateral review.  (See [96] at 10-17, 19-40, [96.1], [96.2], [96.3], [96.4], [96.5]; see also [98] at 4-38).[4]

A federal habeas petitioner must first exhaust his state court remedies or show that a state corrective process is unavailable or ineffective to protect his rights.  28 U.S.C. § 2254(b)(1).  Exhaustion requires that a state prisoner present his claims, on direct appeal or collateral review, to the highest state court according to that state's appellate procedure.  Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (per curiam).  "Under Georgia law, a prisoner seeking a writ of habeas corpus vacating his conviction must present all of his grounds for relief in his original petition."   Mincey v. Head, 206 F.3d 1106, 1136 (11th Cir. 2000); see O.C.G.A. § 9-14-51 ("All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition.

---

[4]     Petitioner claims that he still has a habeas petition pending in Mitchell County, Georgia, that purportedly contains the grounds for relief the Magistrate Judge found were procedurally defaulted.  A review of Petitioner's May 18, 2007, filing in Mitchell County [76.1] shows that Petitioner raised the following grounds: voluntariness of his guilty plea and ineffective assistance of trial counsel.  As explained above, the Georgia Supreme Court adjudicated these grounds for relief.  Petitioner does not identify any additional claims he raised in his May 18, 2007 petition.

Any grounds not so raised are waived unless . . . [those grounds] could not reasonably have been raised in the original or amended petition."). This procedural rule is designed to bar successive habeas petitions on a single conviction. See Hunter v. Brown, 223 S.E.2d 145, 146 (Ga. 1976).

The Eleventh Circuit has "repeatedly recognized that not complying with this [Georgia procedural] rule precludes federal habeas review." Mincey, 206 F.3d at 1136; see Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) (concluding "that a state habeas court would hold [petitioner's] claims to be procedurally defaulted and not decide them on the merits, because they were not presented in his initial state habeas petition" and "that those claims [therefore] are procedurally barred from review in this federal habeas proceeding and exhausted.").

A petitioner may obtain federal habeas review of procedurally defaulted claims by (1) showing cause and actual prejudice, or (2) presenting "proof of actual innocence, not just legal innocence." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298,

324 (1995). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

Petitioner failed to present all of his grounds for relief in his state-court habeas petition, and the claims not raised in the petition are procedurally barred. To avoid procedural default of these claims, Petitioner claims he is actually innocent. In support of his claim of actual innocence, Petitioner presents affidavits from his mother, Leonie Cadet Merilien, and his sister, Marie Veronique Merilien. Both individuals claim Petitioner's children, Raphael and Stacha, confessed to them that they had murdered Petitioner's wife and mother-in-law. The Court finds the affidavits are not "reliable evidence," because neither Petitioner's mother nor his sister explains the approximately seven-year delay in submitting their affidavits. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1935-36 (2013) ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite [actual innocence] showing."); see also Freeman v. Trombley, 483 F. App'x 51, 60 (6th Cir. 2012) (alibi affidavit submitted years after the petitioner's trial was insufficient to establish a credible actual-innocence claim); Milton v. Sec'y, Dep't of Corr., 347 F. App'x 528, 531-32 (11th Cir. 2009) (finding reliability of affidavits from family members

created after trial "are called into question" and are not sufficiently reliable evidence to support a claim of actual innocence).

Even if the affidavits presented new, reliable evidence of actual innocence, the evidence presented in the affidavits is not sufficient to show it is "more likely than not that no reasonable juror would have convicted" Petitioner in light of the evidence. <u>Schlup</u>, 513 U.S. at 327. Petitioner's mother's and sister's affidavits are contradicted by the "overwhelming evidence" against Petitioner. (<u>See</u> [14.2] at 6). In a videotaped confession, Petitioner described, in detail, the murders for which he was convicted. Petitioner confessed that, shortly after the murders, he called a family friend and told him he just murdered his wife and his mother-in-law. (Guilty Plea Tr. (14.3) at 74-79). Further, the state habeas court noted: "after counsel discovered . . . that some of Petitioner's children were going to testify for the state about their firsthand observations and that other family members . . . were going to testify contrary to what Petitioner was expecting . . . counsel began to discuss Petitioner's options with him." ([14.2] at 5-6).[5]

---

[5]     Petitioner now also claims Sarah Rodriguez, with whom Petitioner has a child, is a "key witness" who can bolster his alibi defense. (Mot. for Evidentiary Hr'g at 1). Petitioner does not provide an affidavit to support his self-serving claims, and the Court finds Petitioner's claims are not "reliable evidence" of actual innocence. Even if Ms. Rodriguez provided an affidavit, as explained above, the evidence against Petitioner is substantial, and Petitioner fails to show it is "more

Because Petitioner does not provide reliable proof of actual innocence, and because the purported proof does not establish that it is more likely than not no reasonable juror would have convicted Petitioner, the Court denies habeas corpus relief on Petitioner's procedurally defaulted claims.

### 4. Certificate of Appealability

A federal habeas "applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2254 Cases in the United States District Courts, Rule 11(a). A court may issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that

---

likely than not that no reasonable juror would have convicted" Petitioner in light of the evidence. Schlup, 513 U.S. at 327. In addition, to the extent Petitioner claims ineffective assistance of counsel based on his trial counsel's purported "misadvice" regarding Ms. Rodriguez's testimony, Petitioner never raised this claim in his state habeas petition, and the issue is thus procedurally defaulted under Georgia's successive petition rule. See O.C.G.A. § 9-14-51; Chambers, 150 F.3d at 1327. Petitioner's Motion for an Evidentiary Hearing with respect to Ms. Rodriguez is denied.

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

> When the district court denies a habeas petition on procedural grounds . . ., a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack, 529 U.S. at 484.

The Magistrate Judge found that a COA should be denied because it is not debatable that Petitioner fails to assert claims warranting federal habeas relief.  (R&R at 22-23).  The Court agrees, and a COA is denied.  Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts.

## II.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report & Recommendation [130] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Petitioner's Objections to the R&R [134] are **OVERRULRED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to File Amended or Additional Objections [135] is **GRANTED**.  The additional objections contained within Petitioner's motion are **OVERRULED**.

**IT IS FURTHER ORDERED** that Petitioner's Amended 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus [96] is **DENIED**.  A COA is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Change Respondent Name [136] is **GRANTED**.  The Clerk of Court is **DIRECTED** to substitute Warden Antoine Caldwell as Respondent.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Review Documents and Request for the Court to Review Documents to Support Objections and Amended Petition [138] is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing to Allow Key Witness to Testify without fear of Deportation to El Salvador [139] is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**SO ORDERED** this 9th day of June, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE